```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

JAMES FERRELL
NINA FERRELL,

      Plaintiffs,

v.				Civil Action No. 2:11-0260

SANTANDER CONSUMER USA, INC.,

      Defendant.


### MEMORANDUM OPINION AND ORDER

Pending is defendant's motion for summary judgment, filed December 29, 2011.[1]  For the reasons set forth below, defendant's motion is granted in part and denied in part.

---

[1] Also pending is plaintiffs' motion for leave to extend the page limit for plaintiffs' response in opposition to defendant's motion for summary judgment, filed January 9, 2012.  It is ORDERED that plaintiffs' motion be, and it hereby is, granted.
    Pursuant to the scheduling order in this case, dispositive motions except those filed under Rule 12(b) were due by December 27, 2011.  As noted, defendant filed its motion for summary judgment and accompanying memorandum two days late, on December 29, 2011.  Defendant is cautioned to adhere to the court's scheduling order.
    In this connection, plaintiffs request in their response memorandum that the court order defendant to pay the costs and reasonable attorney fees incurred by plaintiffs as a result of defendant's untimely filing. (Pl.'s Response at 1-2).  Inasmuch as no costs or attorney fees are identified as having been incurred by plaintiffs as a result of the two-day delay, plaintiffs' request is denied.

I.  Background

This action, brought pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A-1-101, et seq., arises out of a consumer loan made to plaintiffs James Ferrell and Nina Ferrell for the purchase of an automobile.  Plaintiffs are residents of Mingo County, West Virginia.  (Compl. ¶ 1).  Defendant Santander Consumer USA, Inc. ("Santander"), owner of the consumer loan, is an Illinois corporation with its principal place of business in Texas. (Notice of Removal ¶¶ 11-12).  The following factual recitation is taken in the light most favorable to plaintiffs.

On May 3, 2008, James and Nina Ferrell purchased an automobile from Wright Automotive in Welch, West Virginia. (Def.'s Ex. A., Retail Installment Contract and Security Agreement (the "contract")).  The contract required the Ferrells to make monthly payments of $257.97 per month for 72 months. (Id.).[2]  It was assigned to Santander effective September 6,

---

[2] While there is no dispute as to the terms of the contract, the court observes that the copy of the contract in the record is almost entirely unreadable due to low resolution.  In an order dated February 3, 2012, the court asked that defendant

(Cont.)

2

2010. (See Pl.'s Ex. F, Letter to James Ferrell dated 9/6/2010). At some unknown point, plaintiffs fell in arrearage with respect to payments for the vehicle. (J. Ferrell dep. at 31:17-23).

Plaintiffs allege that on September 16, 2010, Mr. Ferrell notified defendant via telephone that they were represented by counsel, at which time he gave defendant their attorney's name, address, and phone number. (Compl. at 4(b)). Mr. Ferrell cannot identify the name of the individual with whom he spoke, and Santander asserts that it has no record of James Ferrell ever advising it that the Ferrells were represented by counsel. (J. Ferrell dep. at 15-16; Def.'s Ex. C, Collections Activity Summary). In fact, Santander points out that it has no record of any telephone call being placed to or received from the Ferrells on September 16, 2010. (Def.'s Ex. C, Collections Activity Summary). At no time did the Ferrells again advise Santander that he and his wife were represented by counsel. (J. Ferrell dep. at 17-18; Def.'s Ex. E, Plaintiffs' Responses to Interrogatories at 2, 3, 5, and 6). Santander readily concedes

---

refile the contract in a legible form. Defendant responded that the low resolution copy was the only copy in their possession.

3

that in the months following September 16, 2010, it placed several dozen telephone calls to the Ferrells with respect to payments they owed Santander pursuant to the contract.  (Def.'s Ex. C, Collections Activity Summary; Def.'s Ex. D Ferrells' Personal Call Log).  Santander and plaintiffs each present call logs that vary in the amount, date, and times of calls allegedly made by and to plaintiffs.  (Id.).

Plaintiffs instituted this action on March 4, 2011, in the Circuit Court of Mingo County, West Virginia.  Defendant removed on April 19, 2011, invoking the court's diversity jurisdiction.  The complaint alleges five counts: Count I (72 WVCCPA violations); Count II (negligence); Count III (intentional infliction of emotional distress); Count IV (invasion of privacy); and, Count V (nuisance).  Defendant answered the complaint and filed a counterclaim for breach of contract.  On December 29, 2011, defendant filed a motion for summary judgment on all claims asserted by the Ferrells.

II.   Motion for Summary Judgment

A.   Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a

5

genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.  Count I: WVCCPA Claims

The West Virginia Supreme Court of Appeals has indicated that the WVCCPA is to be construed broadly:

> The purpose of the [WVCCPA] is to protect consumers
> from unfair, illegal, and deceptive acts or practices

6

>by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action.  As suggested by the court in State v. Custom Pools, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose."  Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

McGraw v. Scott Runyan Pontiac-Buick, Inc., 461 S.E.2d 516, 523 (W. Va. 1995) (internal citations omitted).

In Count I, plaintiffs allege that defendant engaged in repeated violations of the WVCCPA.  Specifically, they contend that defendant placed 72 calls, each comprising a separate violation of West Virginia Code § 46(A)-2-125 ("Abuse Provision").  (Compl. at 4(a)).  The provision states, in relevant part, that

>[n]o debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
>* * *
>
>(d) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number.

7

W. Va. Code § 46(A)-2-125.

Defendant does not dispute that it placed multiple telephone calls to plaintiffs. Rather, it contends that no evidence supports a finding that the telephone calls were unreasonably oppressive or abusive, or performed "with intent to annoy, abuse, oppress or threaten any person at the called number," as required by the statute. Id. Plaintiffs counter that summary judgment is inappropriate for several reasons. First, they observe that plaintiffs' handwritten call log and Santander's call records evidence "a great disparity in the true amount of collection calls placed by Santander." (Pl.'s Response at 5). That is, the Ferrell's handwritten call log indicates that 72 calls were made to plaintiffs between September 16, 2010 to November 22, 2010. (Pl.'s Ex. B, Ferrells' Personal Call Log). Santander's log appears to indicate even more calls than plaintiffs recorded. (Def.'s Ex. C, Collections Activity Summary).

Plaintiffs also assert that the sheer volume of the calls is sufficient at this stage to demonstrate a genuine dispute of material fact with respect to the issues of abusiveness and defendant's intent, given the number of calls

8

that were repeatedly placed to their telephone in the space of some two months.  Defendant replies that merely making multiple phone calls in a day or back-to-back days is not sufficient to indicate "unreasonably oppress[ive] or abus[ive]" conduct, or an intent to "annoy, abuse, oppress, or threaten" the Ferrells.  While defendants are correct that evidence in the record demonstrating such conduct may be modest, it is enough to survive summary judgment.  Still other evidence indicates defendant called Mr. Ferrell's co-worker Chris Strickland on Strickland's personal cell phone and Mrs. Ferrell's sister, Linda Browning, and, in at least one instance, generally mentioned his indebtedness with his brother's wife, Chrissy Ferrell.[3]

Plaintiffs have presented a genuine issue of material fact with regard to whether Santander acted with the requisite intent required by § 46A-2-125(d).  The plain language of the section, broadly construed, warrants such a conclusion.  The

---

[3] Mr. Ferrell testified that his "boss" is also his brother, Jonathan Ferrell.  (J. Ferrell dep. at 26-27).  Plaintiffs allege that Santander called Jonathan's wife, Chrissy Ferrell.  Plaintiffs do not allege and present no evidence that Santander spoke with Jonathan Ferrell or called him in the capacity as James Ferrell's "boss."

statute explains that calls can be unreasonably oppressive or abusive in three ways: (1) when the calls are made "repeatedly or continuously;" (2) when the calls are made "at unusual times;" or (3) when the calls are made "at times known to be inconvenient." § 46A-2-125(d). Plaintiffs have directed the court to records indicating defendant made "repeated or continuous[]" calls to plaintiffs. That is sufficient to preclude summary judgment on plaintiffs' claims arising under the Abuse Provision in Count I.

Furthermore, plaintiffs also assert in Count I that defendant violated West Virginia Code § 46(A)-2-128(e) ("Representation Provision") inasmuch as all 72 of the phone calls were made after Mr. Ferrell notified defendant that plaintiffs were represented by an attorney. (Compl. at 4(b)). Section 46A-2-128 provides, in relevant part, that

> [n]o debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> ***
>
> (e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question

>       or unless the attorney consents to direct
>       communication.

W. Va. Code 46A-2-128(e).

Santander denies that the Ferrells ever notified it that they were represented by counsel.[4] Mr. Ferrell claims he gave defendant their attorney's name, address, and phone number. (Compl. at 4(b); J. Ferrell dep. at 15-16). This evidentiary dispute gives rise to a rather clear cut genuine issue of material fact. Summary judgment is thus inappropriate for plaintiffs' claims arising under the Representation Provision in Count I.

C.   Counts II – V: Common Law Claims

In Count II, plaintiffs allege that the numerous telephone calls complained of in Count I also constitute negligence. More precisely, the Ferrells contend that Santander

---

[4] In this connection, Santander counters that plaintiffs cannot identify the individual with whom they spoke and advised that they were represented by counsel, and that it does not appear from Santander's records that the Ferrells were in fact represented by counsel. (Def.'s Mem. 9-10). While such evidence may aid defendant at trial, the fairly fundamental dispute here as to whether Santander knew plaintiffs were represented by counsel is a credibility determination left to the finder of fact.

11

breached its duty "to properly education [sic] and train their employees in how not to violation [sic] various State collection laws." (Pl.'s Response at 24-25). This duty, according to plaintiffs, arises from West Virginia Code § 46A-5-101(8), which states as follows:

> If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error, no liability is imposed under subsections (1), (2) and (4) of this section, and the validity of the transaction is not affected.

W. Va. Code § 46A-5-101(8). Plaintiffs do not explain how this particular provision gives rise to an actionable duty in tort.

Plaintiffs also assert that Santander negligently trained and supervised its employees. In this connection, the Ferrells contend that

> due to the fact the Plaintiff has alleged more than 72 violations of the WVCCPA, it is safe to assume that the Defendant negligently failed to train, educate and/or supervise their employees due to their employee's tenacious debt collection tactics and its failure to acknowledge 56 known additional calls to the Plaintiffs and third parties.

(Pl.'s Response at 25).

Under West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly

12

supervise its employees and, as a result, those employees proximately caused injury to another. Taylor v. Cabell Huntington Hosp., Inc., 538 S.E.2d 719, 725 (W. Va. 2000) (treating negligent supervision like other claims based in negligence). Plaintiffs point to the volume of calls made to plaintiffs and the alleged recordkeeping inconsistencies -- conduct Santander adamantly disputes was wrongful -- in support of their claim. While plaintiffs fail to set forth any direct evidence of defendant's employment customs or policies, an inference of negligent supervision may at this stage be said to arise from the sheer volume of the calls and the third parties to whom some calls were placed, all of which occurred after Mr. Ferrell says he notified Santander of his representation by counsel. That inference is barely sufficient to withstand the request for summary judgment on the negligent supervision or hiring claim. Accordingly, defendant's motion for summary judgment on Count II is denied.

In Count III, plaintiffs allege that the numerous telephone calls described above and calls made to Mr. Ferrell's workplace constitute intentional infliction of emotional distress. The West Virginia Supreme Court of Appeals has explained that

13

> "[i]n order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."

Syl. pt. 2, Philyaw v. E. Associated Coal Corp., 633 S.E.2d 8, 9 (W. Va. 2006) (quoting Syl. pt. 3, Travis v. Alcon Labs., 504 S.E.2d 419, 421 (W. Va. 1998)). Moreover, "to support a claim of extreme and outrageous conduct, it is not enough that the defendant acted with a tortious intent or . . . that the defendant's conduct could be characterized as malicious." Id. at 14. Rather, the court explained, "liability depends upon whether the conduct has been so extreme and outrageous 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Johnson v. Hills Dep't Stores, 488 S.E.2d 471, 474 (W. Va. 1997)). Acknowledging the court's "'gate-keeping' role in actions of this nature," id., the Supreme Court of Appeals has held that

> [i]n evaluating a defendant's conduct in an intentional or reckless infliction of emotional

14

> distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

Syl. pt. 3, id. at 9 (quoting Syl. pt. 4, Travis, 504 S.E.2d at 421).

Plaintiffs fall far short of presenting sufficient evidence of an intentional infliction of emotional distress. They offer no evidence indicating that the calls occurred at inappropriate hours or that the callers used abusive or threatening language. The mere fact that defendant attempted to collect plaintiffs' debt by the telephone calls outlined above over a couple of months is, without more, quite insufficient to support an intentional infliction of emotional distress claim. This conclusion is buttressed by a stark absence of factual support indicating plaintiffs actually suffered emotional distress as a result of the collection calls. Accordingly, defendant is granted summary judgment on Count III.

In Count IV, plaintiffs assert invasion of privacy. Again, plaintiffs rely on the volume of calls and the fact that defendant called Mr. Ferrell's co-worker Chris Strickland and

15

his wife's sister, Linda Browning, and generally mentioned his indebtedness over the phone to his brother's wife, Chrissy Ferrell. (N. Ferrell dep. at 22:1-2). In West Virginia, "[a]n 'invasion of privacy' includes an unreasonable intrusion upon the seclusion of another. . . ." Syl. pt. 8, in part, Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70 (W. Va. 1983). Plaintiffs offer no other citations to the record in support of this contention, and present no proof of damages. Instead, this claim appears as a bare reassertion of the Ferrells' intentional infliction of emotional distress allegations. Plaintiffs' invasion of privacy claim accordingly fails.

In Count V, plaintiffs allege that the repeated telephone calls also constitute nuisance. "A private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land." Syl. pt. 3, Burch v. Nedpower Mount Storm, LLC, 647 S.E.2d 879, 882 (W. Va. 2007) (quoting Syl. pt. 1, Hendricks v. Stalnaker, 380 S.E.2d 198 (W. Va. 1989)). "An interference with the private use and enjoyment of another's land is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm." Syl. pt. 4, id. (quoting Syl. pt. 2, Hendricks, 380 S.E.2d 198). Assuming a private nuisance action will lie for

16

the conduct alleged, plaintiffs do not explain how the numerous collection calls over a period of months constituted nuisance. Rather, the Ferrells rely only on the sheer volume of calls in total as the only basis for this claim.  Moreover, plaintiffs do not set forth any proof of damages.  Consequently, the Ferrells' nuisance claim cannot survive summary judgment.

### III.   Conclusion

In view of the foregoing discussion, the court ORDERS that defendant's motion for summary judgment be, and it hereby is, denied as to Counts I and II and granted as to Counts III, IV, and V.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

Enter: March 19, 2012

_____
John T. Copenhaver, Jr.
United States District Judge

17